UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | ED CV 15-01143 RGK (SPx) | Date | December 4, 2015 |
|---|---|---|---|
| Title | *Steven Russell v. Kohl's Department Stores, Inc* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams, Not Present | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(IN CHAMBERS) Plaintiffs' Motion for Class Certification (DE 25)**

### I.   INTRODUCTION

On June 11, 2015, Steven Russell ("Russell") and Donna Caffey ("Caffey") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated ("Class Members"), filed a class action against Kohl's Department Stores, Inc. ("Defendant").

On August 14, 2015, Plaintiffs filed a First Amended Complaint ("FAC"), alleging the following claims: (1) unfair, fraudulent, and unlawful business practices in violation of California Business & Professions Code § 17200 *et seq*. ("UCL") and (2) false advertising in violation of California Business & Professions Code § 17500 *et seq*. ("FAL").

On October 6, 2015, this Court denied Defendant's Motion to Dismiss the FAC. (Order Den. Mot. Dismiss FAC, ECF No. 32.)

Presently before the Court is Plaintiffs' Motion for Class Certification. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion.

### II.   FACTUAL BACKGROUND

Defendant is a large national retailer that owns and operates approximately 126 retail stores in California. Russell purchased products from Defendant on approximately 15 occasions throughout the Class Period[1]. Caffey purchased products from Defendant on over 10 occasions throughout the Class Period.

Each item that Defendant offers for sale in its stores displays two prices: (1) the selling price and (2) a significantly higher price that is represented to be the item's "regular" or "original" price ("Actual

---

[1]The Class Period is the period from June 11, 2011 to the present.

Retail Price" or "ARP"). By simultaneously displaying these two prices, Defendant leads consumers to believe that they are receiving a certain discount. Plaintiffs and Class Members each encountered these ARPs on the items they purchased from Defendant. Plaintiffs reasonably believed that the ARPs represented the price at which Defendant regularly sold each respective item, and that they were receiving a significant discount.

Plaintiffs allege that the ARPs affixed to each item at Defendant's California stores throughout the Class Period were false prices and not true ARPs for Defendant's merchandise. Plaintiffs also allege that the advertised ARPs were not the prevailing market retail prices within the three months immediately preceding the publication of the advertised ARPs, as required by California law. Therefore, Plaintiffs argue, Defendant falsely claims that each of its products has previously sold at a far higher ARP in order to induce Plaintiffs and Class Members to purchase merchandise at a purportedly marked down "sale" price.

Plaintiffs were exposed to Defendant's comparative price advertising and each relied upon such false representations of discounts when purchasing merchandise from Defendant. Plaintiffs were deceived and misled into buying products from Defendant that they would not have purchased if not for Defendant's false advertising. Plaintiffs lost money and/or property as a result.

In the current motion, Plaintiffs seek to certify the following class:

> All persons who, while in the State of California, and between June 11, 2011, and the present (the "Class Period"), purchased from Kohl's one or more items at any Kohl's store in the State of California at a discount of at least 30% off of the stated "original" or "regular" price, and who have not received a refund or credit for their purchase(s).

(Pl.s' Mot. Class Certification at 1, ECF No. 25.)

### III.   JUDICIAL STANDARD

For certification of a class action under Federal Rule of Civil Procedure 23, the plaintiff bears the burden of establishing each of the prerequisites set forth in Rule 23(a). *Hanon v. Dataproducts, Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

In addition to finding that the requirements of Rule 23(a) have been satisfied, the Court must also find that at least one of the following three conditions of Rule 23(b) is satisfied: (1) the prosecution of separate actions would create risk of (a) inconsistent or varying adjudications, or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b).

## IV. DISCUSSION

Plaintiffs argue that all requirements imposed by Rule 23(a) are satisfied and that class certification is proper under Rule 23(b)(1) or 23(b)(2). They move to certify a class seeking both injunctive relief and monetary relief in the form of restitution.

For the following reasons, the Court finds that the class does not satisfy either Rule 23(b)(1) or Rule 23(b)(2). Without analyzing Rule 23(a) prerequisites, the Court therefore denies class certification.

### A. Rule 23(b)(1)

As Plaintiffs seek certification under Rule 23(b)(1)(A) and Rule 23(b)(1)(B), the Court addresses each subsection in turn.

#### 1. *Rule 23(b)(1)(A)*

A class is maintainable under Rule 23(b)(1)(A) if "prosecution of separate actions . . . would create inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class . . . . " Fed. R. Civ. P. 23(b)(1)(A).

Plaintiffs argue that certification under subsection (A) is proper because "there are over 100,000 potential plaintiffs who could individually file suit for restitution," which would create a risk of "inconsistent and varying" adjudications and impose "incompatible standards of conduct" on Defendant. (Pl.s' Mot. Class Certification at 13, ECF No. 25.) Plaintiffs have essentially recited the language of Rule 23(b)(1)(A) without providing an iota of detail about why their class is appropriately certified under this subsection. In fact, in their reply, Plaintiffs never revisit their argument for certification under Rule 23(b)(1)(A), nor do they respond to Defendant's opposition challenging the propriety of Rule 23(b)(1)(A) for this class. Plaintiffs' silence on this issue is well taken, as they hold the losing position.

While the exact contours of Rule 23(b)(1)(A) are not clearly defined, the Ninth Circuit has repeatedly held that Rule 23(b)(1)(A) does not apply to classes seeking monetary relief. *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973) ("Infrequently, if ever, will [Rule 23(b)(1)(A) apply] when the action is for money damages."); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) ("Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for damages."). It is well established that Rule 23(b)(1)(A) does not function to certify classes seeking monetary relief. To understand why this is so, the Court reviews the purpose underlying the rule.

Rule 23(b)(1)(A) is rooted in practical necessity. The rule was designed to certify classes in those situations where "the defendant by reason of the legal relations involved can not as a practical matter pursue two different courses of conduct." *La Mar*, 489 F.2d at 466. As an illustration, the Advisory Committee Notes accompanying Rule 23 provide several examples of situations ideally suited for certification under Rule 23(b)(1)(A). These examples include: separate actions against a municipality to declare a bond, individual litigations of the rights and duties of riparian owners, or multiple lawsuits to declare landowners' rights and duties respecting a claimed nuisance. 39 F.R.D. 69, 100 (1966). In each of these scenarios, "practical necessity forces the [defendant] to act in the same manner toward the individual class members and thereby makes inconsistent adjudications in separate actions unworkable or intolerable." 7AA Charles Alan Wright, Arthur R. Miller, et al. Federal Practice & Procedure §1773 (3d ed.).

Understanding the purpose behind Rule 23(b)(1)(A) cements the conclusion that the rule does

not envision or contemplate a class merely seeking monetary damages. In denying certification of a class seeking monetary relief, the most severe risk conceivable is that each class member would initiate an individual lawsuit, resulting in disparate monetary awards. Such a risk, however, wold not impose "incompatible standards of conduct" because a defendant could easily comply with judgments imposing varying levels of monetary liability. *McDonnell-Douglas Corp. v. U.S. Dist. Court for Cent. Dist. of California*, 523 F.2d 1083, 1086 (9th Cir. 1975) ("In this case, a judgment that defendants were liable to one plaintiff would not require action inconsistent with a judgment that they were not liable to another plaintiff. By paying the first judgment, defendants could act consistently with both judgments."). As a leading treatise explains, "Rule 23(b)(1)(A) requires more than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts, as typically would be the case in a mass-disaster or products-liability situation, for example." 7AA Charles Alan Wright, Arthur R. Miller, et al. Federal Practice & Procedure §1773 (3d ed.).

Regarding Plaintiffs' request for restitution, class certification is inappropriate under Rule 23(b)(1)(A). Although restitution is an equitable remedy, not technically a request for damages, in this context restitution is more akin to an award of monetary damages for each class member. *Heffelfinger v. Elec. Data Sys. Corp.*, No. CV 07-00101, 2008 WL 8128621, at *18 (C.D. Cal. Jan. 7, 2008) (holding, in an identical situation, that "even though the relief sought is technically restitutionary, it is more analogous to an individual award of damages to each class member than to injunctive relief"). As previously explained, Rule 23(b)(1)(A) does not apply to classes seeking monetary relief. Therefore, Rule 23(b)(1)(A) cannot support Plaintiffs' motion to certify a class seeking restitution.

As to injunctive relief, class certification is proper under 23(b)(1)(A) because the rule contemplates a situation where, as here, Defendant is "obligated by law to treat members of the class alike." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (internal quotation marks omitted). If Plaintiffs prevail on their claim for injunctive relief, Defendant would be required to refrain from its allegedly deceptive price-comparison advertising, thereby treating all class members in the same manner. Consider, for instance, a situation where certification is denied and some individuals secure an injunction prohibiting the price-comparison advertising whereas others are unable to prevail on the same action. In such a situation, Defendant would be held to "incompatible standards of conduct." Therefore, Rule 23(b)(1)(A) allows Plaintiffs to certify a class seeking injunctive relief.

    2.    *Rule 23(b)(1)(B)*

Rule 23(b)(1)(B) allows class actions where individual lawsuits might "as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

Plaintiffs argue that certification under subsection (B) is proper because "an adjudication with respect to either Plaintiff here will necessarily involve a ruling regarding whether a reasonable consumer is or was likely to be deceived . . . . Such a ruling risks being dispositive of the interests of every other Class Member . . . or at a minimum would substantially impair or impede their ability to protect their own interests." (Pl.s' Mot. Class Certification at 13-14, ECF No. 25.) Plaintiffs fail to explain how an adjudication of their individual claims would impair the rights of putative class members. Their argument under subsection (B), much like their previous argument under subsection (A), relies on labels instead of logic, parroting the language of Rule 23 without providing any analysis.

Unlike subsection (b)(1)(A), which is concerned with the rights of the defendant, subsection (b)(1)(B) "is concerned only with the rights of unnamed class members." *McDonnell-Douglas*, 523 F.2d at 1086. A class is properly certified under Rule 23(b)(1)(B) only "[i]f the individual action inescapably will alter the substance of the rights of others having similar claims." *La Mar*, 489 F.2d at 467. Subsection (b)(1)(B) envisions class certification in situations involving a common fund from which all

class members will jointly recover, such that any adjudication by individual plaintiffs would necessarily impair the rights of other members. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). Examples include lawsuits by shareholders to declare a dividend, claimants seeking finite trust assets, or beneficiaries suing a retirement plan administrator. "In each of these categories, the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Id.*

Here, the outcome of Plaintiffs' individual actions would not inescapably alter the rights of others similarly situated, who would remain free to pursue their own claims against Defendant. Regardless of how the Plaintiffs' individual lawsuits fared, each of the putative class members would still be entitled to bring an action against Defendant seeking restitution or an injunction. *In re First Am. Corp. ERISA Litig.,* 258 F.R.D. 610, 622 (C.D. Cal. 2009) ("Because the putative class members have an individual remedy, they can pursue relief on their own behalf."); *Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc*., No. C 11-0299, 2012 WL 5199458, at *6 (N.D. Cal. Oct. 22, 2012) ("[T]he damages sought . . . clearly are intended to provide relief to individual members of the class. Accordingly, the class cannot be certified under Rule 23(b)(1)(B).").

Accordingly, certification is improper under Rule 23(b)(1)(B).

### B.     Rule 23(b)(2)

Rule 23(b)(2) authorizes class treatment where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In the present action, Plaintiffs seek an injunction preventing Defendant from disseminating false price-comparison advertising schemes. (Pl.s' Mot. Class Certification at 18, ECF No. 25.) Plaintiffs also seek monetary relief in the form of restitution, but they do not specify how restitution is to be measured or calculated across the class. (Pl.s' Mot. Class Certification at 14-17, ECF No. 25.)

"Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011). This case typifies the kind of action properly certified under Rule 23(b)(2) insofar as Plaintiffs seek a single injunction prohibiting Defendant from further disseminating false price-comparison advertising schemes. If Plaintiffs can prove that Defendant engaged in a fraudulent price-comparison advertising scheme, then a single injunction prohibiting Defendant from continuing such misleading advertising practices would provide relief to all class members at once. Therefore, Plaintiffs' class is appropriately certified under Rule 23(b)(2) to the extent the class seeks injunctive relief.

Of course, the analysis does not end there because Plaintiffs also move to certify a class seeking monetary relief in the form of restitution. While certification of a class seeking monetary relief is not categorically barred under Rule 23(b)(2), the monetary relief must be incidental to the injunctive relief. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011) ("We now hold that [claims for monetary relief] may not [be certified under Rule 23(b)(2)], at least where . . . the monetary relief is not incidental to the injunctive or declaratory relief."). Here, Plaintiffs argue that the monetary relief sought is merely incidental to and flows directly from the injunctive relief. According to Plaintiffs, the claim for injunctive relief is the linchpin of the entire lawsuit because a finding that injunctive relief is appropriate will "result in the Court exercising its discretion . . . to order some form of restitution." (Pl.'s Reply ISO Mot. Class Certification at 9, ECF No. 48.) The Court disagrees.

For guidance on this issue, the Court turns to the underlying rationale that prompted the Supreme Court to curtail the certification of classes seeking monetary relief under Rule 23(b)(2). After considering the structure and history of Rule 23(b)(2), the Supreme Court noted, "The key to the (b)(2)

class is 'the indivisible nature of the injunctive or declaratory remedy warranted.'" *Dukes*, 131 S. Ct. at 2557. Because Rule 23(b)(2) contemplates "an indivisible injunction benefitting all its members at once," there is no reason to determine whether common issues predominate. *Id.* at 2558. Moreover, Rule 23(b)(2) obviates the need to provide notice or an opportunity for potential class members to opt out because "when the class is mandatory . . . depriving people of their right to sue in this manner complies with the Due Process Clause." *Id.* at 2559. The same rationale does not apply when class members seek primarily monetary relief; instead, a class action seeking individualized monetary relief is more appropriately governed by Rule 23(b)(3) for two reasons. *Id.* at 2558. First, unlike a class seeking a single injunction that applies uniformly to each class member, a class seeking primarily monetary relief must demonstrate predominance under Rule 23(b)(3). *Id.* at 2559. Second, Rule 23(b)(3) requires notice and opportunity to opt out because the Supreme Court has held that "[i]n the context of a class action predominantly for money damages . . . absence of notice and opt-out violates due process." *Id.* For these reasons, the Court held that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.* at 2557.

Based on the reasoning in *Dukes*, a class seeking monetary damages may be certified under Rule 23(b)(2) only where the monetary relief can be uniformly applied without the need for individualized determinations, as with statutory or punitive damages. Where, on the other hand, the monetary relief varies according to each class member, certification under Rule 23(b)(2) is improper. Applying this framework to the case at hand, the Court concludes that Plaintiffs' request for monetary relief is not incidental to the injunctive relief, and, therefore, the restitution claim is not properly certified under Rule 23(b)(2). Any claim for restitution in the present case will necessarily depend on the unique circumstances of the particular class member. Circumstances such as whether a class member used coupons, how many products she purchased, which products she purchased, and the disparity between the stated and actual ARP on those specific products will drive the determination of any restitution award. The restitution inquiry is highly individualized and, for the reasons articulated above, cannot be certified under Rule 23(b)(2).

Numerous district courts have arrived at the same conclusion in addressing Rule 23(b)(2) certification of classes seeking both an injunction and restitution under the UCL. *I.B. by & through Bohannon v. Facebook, Inc.*, 82 F. Supp. 3d 1115, 1132 (N.D. Cal. 2015) ("[T]he amount of monetary damages due each class member, if any, would be dependent on the individual circumstances of each class member, and thus cannot be determined formulaically. *Dukes* therefore precludes these restitution claims from being certified under (b)(2)."); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 459 (S.D. Cal. 2014) (declining to certify under Rule 23(b)(2) because "Plaintiffs seek individualized monetary relief that would require assessment of each class member's claim based on how many products she purchased, which products she purchased, where she purchased, if she used a coupon, and so forth"); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012) ("[H]ere plaintiffs seek individualized awards of monetary restitution which would require individualized assessments of damages based on how many products the class member had bought."); *In re Flash Memory Antitrust Litig.*, No. C 07-0086, 2011 WL 1301527, at *7 (N.D. Cal. Mar. 31, 2011) ("Because the restitution amount is dependent on the particular purchases made and amounts paid by indirect purchasers, monetary relief will dictate the key procedures utilized in this case and require individualized inquiries and hearings."); *Sepulveda v. Wal-Mart Stores, Inc.*, 464 F. App'x 636, 637 (9th Cir. 2011) (upholding the district court's ruling that monetary relief was not incidental where "the damages plaintiffs sought would 'require highly individualized proof'").

Plaintiffs retort by invoking *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. 2011). There, a plaintiff brought a class action lawsuit against the manufacturer of Children's Coldcalm medicine, alleging that the defendant violated the UCL by mislabeling the Coldcalm product. *Id.* at 585. The plaintiff moved to certify a class seeking both restitution and injunctive relief under Rule 23(b)(2). *Id.* at

592. The court explained that before it could certify the class seeking monetary relief under Rule 23(b)(2), "it must consider whether Plaintiff's claims for monetary damages are incidental to Plaintiff's claim for injunctive relief." *Id.* In so doing, the court found that no individualized issues existed because each Coldcalm product had the same price, meaning that each class member would be entitled to the same refund "differing only due to the number of packages purchased." *Id.*

Plaintiffs' reliance on *Delarosa* is misplaced. For starters, unlike the *Delarosa* class members who all purchased the identical product at the same price, the class members in the present case purchased thousands of items at different price points. Moreover, class members here were exposed to varying levels of disparity between stated and actual ARP—a consideration that will certainly affect the amount of restitution to be awarded. Compounding matters further, Plaintiffs here have not even identified a specific measure of restitution for the Court to examine whether the monetary relief will require individualized determinations. Instead, Plaintiffs flit between numerous theories of restitution (disgorgement, rescission with restitution, false discount value) without committing to or explaining how restitution will be calculated under any single theory. (Pl.s' Mot. Class Certification at 14-17, ECF No. 25.) Therefore, the Court finds the *Delarosa* holding to be inapposite to the current action.

The Court has also considered the Ninth Circuit's recent decision in *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015), which bears on the issue of restitution under the UCL and FAL. After reviewing the appellate court's reasoning in that case, this Court concludes that *Pulaski* is distinguishable, and, therefore, does not alter the outcome of the instant motion.

In *Pulaski*, the plaintiffs used Google's Adwords program, which allowed them to bid for advertisement placement on various websites of their choosing; Google, however, failed to inform plaintiffs that their advertisements could appear on certain other websites that they had not authorized. *Id*. at 982-83. Plaintiffs were charged each time a consumer clicked on their advertisements—even those advertisements placed on websites that plaintiffs did not choose or know about. *Id.* Consequently, plaintiffs brought a class action, alleging that Google violated the UCL and FAL. *Id.* Plaintiffs sought to certify a class under Rule 23(b)(3) and proposed a measure of restitution based on "the difference between what [plaintiffs] actually paid and what they would have paid had Google informed them" of the undisclosed websites. *Id.* at 983. To provide a workable economic model for damages, plaintiffs submitted expert testimony describing three alternative measures for restitution. Admittedly, plaintiffs did gain some value from having their advertisement placed on the unauthorized websites, which prompted the district court to reject plaintiffs' restitution models because they did not account for the benefits that plaintiffs acquired after the fraudulent act. *Id.* at 984.

The Ninth Circuit reversed, holding that "UCL and FAL restitution is based on what a purchaser would have paid at the time of purchase had the purchaser received all the information." *Id.* at 989. According to the Ninth Circuit, whether the plaintiff actually gained any benefit after the misrepresentation is irrelevant because "restitution under the UCL and FAL measures what the advertiser would have paid at the outset, rather than accounting for what occurred after the purchase." *Id.*
Therefore, the district court erred in requiring plaintiffs to submit a damages model that accounted for benefits acquired after Google's alleged misrepresentation. Having clarified the nature of restitution, the appellate court then reviewed plaintiff's expert report and concluded that one of the economic models provided a workable method for calculating restitution that obviated the need for any individualized inquiry under Rule 23(b)(3). *Id.*

*Pulaski* does not alter this Court's conclusion for two reasons. First, unlike the plaintiffs in *Pulaski*, Plaintiffs in the present action failed to submit a single expert report supporting a workable method of determining damages. Instead, as mentioned previously, Plaintiffs present an array of potential economic models in a cursory fashion without any detailed explanation. (Pl.s' Mot. Class

Certification at 14-17, ECF No. 25.) Therefore, on that basis alone, *Pulaski* is inapposite because Plaintiffs here have not met their burden to present a viable damages model. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) ("[A] model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).").

Second, the entire analysis in *Pulaski* centered on certification under Rule 23(b)(3) whereas this Court's order concerns only Rule 23(b)(2). As explained previously, in a situation where the monetary relief presents individualized questions, Rule 23(b)(3) provides a more appropriate analytical framework for class certification because of its predominance inquiry and notice requirements. Plaintiffs in the instant action did not move to certify the class under Rule 23(b)(3), which provides another basis for holding that *Pulaski*, with its focus on Rule 23(b)(3), does not inform the analysis here.

Based on the foregoing, the Court concludes that the monetary relief sought is not incidental to the injunctive relief. Accordingly, the Court grants class certification under Rule 23(b)(2) for the purposes of injunctive relief but not for purposes of monetary relief in the form of restitution.

### C.     Request for Time to Conduct Pre-certification Discovery

According to Local Rule 23-3, a motion for class certification must be filed at the latest 90 days after the filing of a complaint. C.D. Cal. Civ. R. 23-3. Plaintiffs' request additional time to conduct pre-certification discovery and ask the Court to relieve them of the Rule 23-3 filing deadline. (Pl.s' Mot. Class Certification at 8, ECF No. 25.) The Court declines to afford Plaintiffs additional time to conduct pre-certification discovery.

First, Plaintiffs contend that they need more time to "seek documents relating to the advertising and pricing practices of Defendant, and deposition testimony from Defendant" in order to substantiate their class allegations. Plaintiffs have previously filed two motions seeking relief from Rule 23-3 to conduct more discovery, and this Court denied both requests. (ECF No. 20, 22.) Neither request demonstrated that discovery was likely to yield evidence to substantiate class allegations. The latest request also fails to provide any new information justifying the request.

Second, Plaintiffs intimate that this Court's scheduling order somehow impeded their ability to schedule an early 26(f) conference, thereby preventing them from starting discovery early. Not so. This Court set the initial scheduling conference for November 16, 2015. The Federal Rules of Civil Procedure require the parties to hold a 26(f) conference *at least* 21 days prior to the initial scheduling conference. Plaintiffs argue that because of the 21-day requirement, they could not participate in a 26(f) conference any time before October 26, 2015. Plaintiffs' argument is nonsensical, as Rule 26(f) only requires the parties to confer *at least* 21 days before the scheduling conference. It does not set a limit as to how early the parties may arrange for such a conference.

Accordingly, the Court declines to allow more time for pre-certification discovery.

## V. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiffs' motion to certify a class seeking injunctive relief, but **DENIES** Plaintiffs' motion to certify a class seeking restitution.

**IT IS SO ORDERED.**

             : 

Initials of Preparer