C. Benjamin Nutley (177431)
nutley@zenlaw.com
1055 E. Colorado Blvd., 5th Floor
Pasadena, California  91106
Telephone:  (626) 204-4060
Facsimile:  (626) 204-4061

John W. Davis (200113)
LAW OFFICE OF JOHN W. DAVIS
john@johnwdavis.com
501 W. Broadway, Suite 800
San Diego, CA  92101
Telephone: (619) 400-4870
Facsimile: (619) 342-7170

Attorneys for Objector Sarah McDonald

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN RUSSELL, et al.,<br><br>Plaintiff,<br><br>v.<br><br>KOHL'S DEPARTMENT STORES, et al.,<br><br>Defendants. | Case No. 5:15-cv-01143-RGK-SP<br><br>**OBJECTION TO PROPOSED SETTLEMENT; NOTICE OF INTENT TO APPEAR**<br><br>Date:     September 12, 2016<br>Time:     9:00 a.m.<br>Judge:  Hon. R. Gary Klausner<br>Courtroom:   850 |

# **<u>TABLE OF CONTENTS</u>**

I. NOTICE OF INTENT TO APPEAR AND ARGUE ........................................ 1

II. INTRODUCTION .................................................................................... 1

III. ARGUMENT ........................................................................................ 3

   A.    This is a Coupon Settlement under CAFA ........................................ 4

   B.    The Settlement's Injunctive Provisions are Vague
and Unenforceable ........................................................................... 8

   C.    This Proposed Settlement Cannot Withstand the Strong Scrutiny
Accorded to Coupon Settlements ..................................................... 10

   D.    The Court Cannot Presently Approve the Contemplated
Attorneys' Fees ............................................................................... 14

   E.    This is a Coupon Settlement for the Purpose of Calculating Fees
under CAFA ..................................................................................... 15

   F.    The Proposed "Incentive Awards" are Excessive and Precluded by
Binding Supreme Court Authority ................................................... 19

IV.  CONCLUSION ..................................................................................... 23

## **Cases**

*Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ........................................................ 7

*Alcazar v. Corp. of the Catholic Archbishop of Seattle*
627 F.3d 1288 (9th Cir. 2010) ........................................................ 7

*Bailey v. Great Lakes Canning, Inc.*
908 F.2d 38 (6th Cir. 1990) ........................................................ 20

*Billinghausen v. Tractor Supply Co.*
306 F.D.R. 245 (N.D. Cal. 2015) ........................................................ 22

*Bloyed v. General Motors Corp*, 881 S.W.2d 422
(Tex. App. 1994), aff'd 916 S.W.2d 949 (Tex. 1996) ........................................................ 10

*Boeing Co. v. Van Gemert*
444 U.S. 472 (1980) ........................................................ 19

*Buchet v. ITT Consumer Fin. Corp.*
845 F.Supp. 684 (D. Minn. 1994) ........................................................ 13

*Buena Vista, LLC v. New Resource Bank*
2011 WL 250361 (N.D. Cal. 2011) ........................................................ 16

*Carnes v. Zamani*
488 F.3d 1057 (9th Cir. 2007) ........................................................ 16

*Central Railroad Banking Co. v. Pettus*
113 U.S. 116 (1885) ........................................................ 19, 20

*Chalmers v. City of Los Angeles*
796 F.2d 1205 (9th Cir. 1986) ........................................................ 16

*Churchill Village v. General Electric*
361 F.3d 566 (9th Cir. 2004) ........................................................ 3

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*
479 F.3d 1099 (9th Cir. 2007) ........................................................ 15

*Diaz v. Trust Territory of Pacific Islands*
876 F.2d 1401 (9th Cir. 1989) ........................................................ 3

*Figueroa v. Sharper Image Corp.*
517 F. Supp. 2d 1292 (S.D. Fla. 2007) ........................................................ 7

*Flinn v. FMC Corp.*
528 F.2d 1169 (4th Cir. 1975) ........................................................ 21

*Golba v. Dick's Sporting Goods*
  238 Cal. App. 4th 1251 (2015) ..................................................22

*In re Bluetooth Headset Products Liab. Litig.*
  654 F.3d 935 (9th Cir. 2011) ....................................................4

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*
  216 F.R.D. 197 (D. Me. 2003) ................................................ 13

*In Re General Motors Corp. Pick-Up Fuel Tank Products Liability Litig.*
  55 F.3d 768 (3d Cir. 1995) ..................................................... 13

*In re HP Inkjet Litigation*
  716 F.3d 1173 (9th Cir. 2013) .............................. 6, 7, 15, 18

*In re Larry's Apartment, L.L.C.*
  249 F.3d 832 (9th Cir.2001) ................................................... 16

*In re Mercury Interactive Corp. Sec's Litig.*
  618 F.3d 988 (2010) .............................................................. 14

*In re Mexico Money Transfer Litig.*
  267 F.3d 743 (7th Cir. 2001). ............................................... 10

*In re Online DVD-Rental Antitrust Litig.*
  779 F.3d 934 (9th Cir. 2015) ........................................ 7, 8, 21

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*
  148 F.3d 283 (3d Cir. 1998) ................................................. 14

*In re Safeguard Self-Storage Trust*
  2 F.3d 967 (9th Cir. 1993) .......................................................6

*Khatib v. County of Orange*
  639 F.3d 898 (9th Cir. 2011) ...................................................6

*Kincade v. General Tire Rubber Co.*
  635 F.2d 501 (5th Cir. 1981) ................................................. 21

*Mirfasihi v. Fleet Mortgage Corp.*
  356 F.3d 781 (7th Cir. 2004) ....................................................3

*MRO Communications, Inc. v. American Telephone & Telegraph Company*
  197 F.3d 1276 (9th Cir. 1999) .............................................. 15

*Officers for Justice v. Civil S. Com'n of the City and County of San Francisco*
  688 F.2d 615 (9th Cir.1982) ................................................. 20

*Radcliffe v. Experian Info. Solutions*
  715 F.3d 1157 (9th Cir. 2013) ............................................. 21

*Rodriguez v. West Publishing Corp.*
  563 F.3d 948 (9th Cir. 2009) ...................................................... 21

*Schindler Elevator Corp. v. United States ex rel. Kirk*
  131 S.Ct. 1885 (2011) ................................................................. 6

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ...................................................... 21

*Synfuel Techs., Inc. v. DHL Express*
  463 F. 3d 646 (2006) ............................................................ 11, 13

*True v. Am. Honda Motor Co.*
  749 F. Supp. 2d 1052 (C.D. Cal. 2010) ................................... 4, 10

*Trustees v. Greenough*
  105 U.S. 527 (1882) .............................................................. 19, 20

*Weseley v. Spear, Leeds & Kellogg*
  711 F.Supp. 713 (E.D.N.Y. 1989) ............................................. 21

*Willner v. Manpower, Inc.*
  2015 U.S. Dist. LEXIS 80967 (E.D. Cal. 2015) .......................... 22

*Yeager v. AT&T Mobility*
  2012 WL 6629434 (E.D.Cal. Dec. 19, 2012) ............................. 16

## Statutes

28 U.S.C. § 1711 note §2(a)(3)(A) ..................................................... 6

28 U.S.C. §§ 1332(d), 1453, and 1711-1715 ...................................... 4

28 U.S.C. §1712 ........................................................................... 5, 15

Cal. Civ. Code §1717 ....................................................................... 16

Cal. Civ. Code. §1021.5 ..................................................................... 2

Cal. Code Civ. Proc. §1021 ............................................................... 16

Cal. Code Civ. Proc. §1021.5 ............................................................ 16

## Treatises

Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements*,
  60 LAW & CONTMP. PROBS. 97, 108 (1997) ............................. 14

## **Legislative History**

S. Rep. No. 109-14 (2005) ..................................................................... 7

S. Rep. No. 109-14 at 31, reprinted in 2005 U.S.C.C.A.N. 3, 31 ....................... 4

## **Other Authorities**

American Heritage Dictionary of the English Language (5th ed. 2011) .......... 6

California Legislative Counsel, Opinion No. 1488 (February 11, 1997) .......... 8

Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. REV. 991, 1049 (2002) ................................................................. 18

Class Actions' Big Winners: The Lawyers," The Washington Post, May 25, 1997 ................................................................................ 11

Going to the Head of the Class Action Settlement," The Washington Post, April 9, 1996 ...................................................................... 11

Jeffrey S. Jacobson, *Defining 'Coupon' Under the Class Action Fairness Act*, Product Liab. Law 360 (Jan. 15, 2008) ......................................... 7

Morgan Quinn, *Why Retailers Love Gift Cards but You Shouldn't*, GO Banking rates (December 19, 2014, 2:52 p.m.) .............................. 11

The Latest Class Action Scam," The Wall Street Journal, December 27, 1995 ........................................................................................ 11

## I.  <u>NOTICE OF INTENT TO APPEAR AND ARGUE</u>

### TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on September 12, 2016, at 9:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 850 of the above-entitled court located at 255 East Temple Street, Los Angeles, California 90012, class member Sarah McDonald ("Objector"), by and through her counsel, intends to appear and offer argument at the final approval hearing.

## II.  <u>INTRODUCTION</u>

Objector Sarah McDonald is a member of the Settlement Class as set forth in ¶ 1.26 of the Amended Class Action Settlement Agreement and reflected on the claim form attached hereto as Exhibit 1.

As discussed herein, the proposed settlement should not be approved. The effect of the settlement as presently structured appears primarily to (1) provide class counsel with greater compensation than if they had taken the case to trial and won; (2) provide Defendant Kohl's with a marketing program that will bring claiming class members into their stores to make further purchases; and (3) impose a vague and toothless injunction that is of no value to the class or the general public.

As they readily admit, class counsel were faced with a problem in this case: even if advertising a fake regular price is a reprehensible practice subject to being enjoined, there may be no cognizable financial loss to be compensated under applicable civil remedies.  Indeed, this Court initially certified a class only for injunctive relief.  For class counsel, that means that a win at trial would result in an injunction stopping the practice, and judicial oversight to prevent it recurring, but likely no cash fund from which attorneys' fees could be paid.  Class counsel would be relegated to obtaining a reasonable lodestar-based hourly fee from the Defendant, under private attorney general fee shifting statutes such as Cal. Civ. Code. §1021.5.  For its part, a loss at trial would expose Kohl's to a public loss of reputation and strong judicial oversight, not to mention paying for both its own counsel and class counsel to take the case through trial.   Finally, there is also no authority by which a named plaintiff could obtain an "incentive award" via fee-shifting private attorney general statutes.  A win at trial would therefore be suboptimal, not just for Kohl's, but also for class counsel and the named plaintiffs.

Their solution was this settlement, by which Kohl's may continue to assert that it did nothing wrong, is subject to an injunction that is essentially unenforceable, pays no more in attorneys' fees that it would have otherwise, and provides gift cards that will cost it little in comparison to the additional

revenue it can expect to make from customers using them. In exchange, class counsel and the named plaintiffs obtain "clear sailing" on fees and incentive awards that net them more money than they could have obtained had they pursued the case to an actual victory.

The settlement, and the request for attorneys' fees and incentive awards embodied in it, should not be given final approval. The attorneys' fees cannot in any event be awarded for the additional reason that class counsel did not file a motion in advance of the deadline for opting out or objecting.

### III.  ARGUMENT

District judges presiding over class actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole. *Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members"); *see also Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004).

In determining the fairness, adequacy, and reasonableness of the proposed settlement the Court must consider the "strength of the plaintiffs' case," *Churchill Village v. General Electric*, 361 F.3d 566, 576 (9th Cir. 2004). In the case of "coupon" settlements under CAFA, the court "must

discern if the value of a specific coupon settlement is reasonable in relation to the value of the claims surrendered." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010); *see also id.* at 1073 ("In ascertaining the fairness of a coupon settlement, the Court is to 'consider, among other things, the real monetary value and likely utilization rate of the coupons provided by the settlement.'") quoting S. Rep. No. 109-14 at 31, reprinted in 2005 U.S.C.C.A.N. 3, 31.

Additionally, the negotiation of a "clear sailing provision," whereby defendant agrees not to challenge class counsel's request for attorneys' fees[1], triggers heightened scrutiny of the settlement's fairness because of the risk that class counsel may have bargained away valuable relief for the class in exchange for red carpet treatment on fees.  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

## A.   This is a Coupon Settlement under CAFA

Congress specifically addressed the issue of coupon settlements with the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715.  Before the passage of the CAFA, the Senate Judiciary Committee described coupon settlements in this way:

> [A]busive class action settlements in which plaintiffs receive promotional coupons or other nominal damages while class counsel receive large

---

[1]    *See* Amended Class Action Settlement Agreement, ¶ 3.1.3

fees are all too commonplace.  The risk of such abusive practices is particularly pronounced in the class action context because these suits often involve numerous plaintiffs, each of whom has only a small financial stake in the litigation. As a result, few (if any) plaintiffs closely monitor the progress of the case or settlement negotiations, and these cases become "clientless litigation," in which the plaintiff attorneys and the defendants have "powerful financial incentives" to settle the "litigation as early and as cheaply as possible, with the least publicity." These financial incentives create inequitable outcomes. For class counsel, the rewards are fees disproportionate to the effort they actually invested in the case . . . . For society, however, there are substantial costs: lost opportunities for deterrence (if class counsel settled too quickly and too cheaply), [and] wasted resources (if defendants settled simply to get rid of the lawsuit at an attractive price, rather than because the case was meritorious) . . . .

A case is subject to provisions of CAFA, 28 U.S.C. §1712, when class settlement relief takes the form of coupons (or "gift cards" as they are styled in this case) that can be used to make further purchases from the defendant. In this case, no cash is offered in the settlement, and class members have no option to receive a cash payment in lieu of the settlement's gift cards. Accordingly, this is a "pure coupon" settlement as envisioned by Congress when it passed CAFA.

Presumably, Plaintiffs will assert that a "gift card" is not a coupon under CAFA, because a class member does not necessarily need to spend additional money to redeem it, as with a discount, and might thus get a

product free of any charge.  As explained in more detail below, that premise will probably be incorrect in this case if the claims rate is even a few percent or more.  Regardless, that is not a distinction for the purposes of CAFA: a gift card like the one offered here is no less a "coupon."

Settlements providing class members with noncash awards were a central legislative motivation of the Class Action Fairness Act. 28 U.S.C. § 1711 note §2(a)(3)(A).  Congress did not define the term "coupon" in CAFA.  *See* 28 U.S.C.§1711 (definitions).   However, "where a statute does not define a key term, [courts] look to the word's ordinary meaning." *In re HP Inkjet Litigation* ("*Inkjet*"), reported *sub nom Ciolino v. Frank*, 716 F.3d 1173, 1181 (9th Cir. 2013), citing *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S.Ct. 1885, 1891 (2011)).  A coupon is "[a] code or detachable part of a ticket, card, or advertisement that entitles the holder to a certain benefit, such as a cash refund or a gift." American Heritage Dictionary of the English Language (5th ed. 2011).  That definition encompasses the "gift cards" offered here.

The legal effect of the relief "is a question of function, not just labeling." *Khatib v. County of Orange*, 639 F.3d 898, 905 (9th Cir. 2011); *In re Safeguard Self-Storage Trust*, 2 F.3d 967, 970-74 (9th Cir. 1993) ("if it looks like a duck, walks like a duck, and quacks like a duck, it must be a duck.").  Parties cannot rely on semantic stipulation "as a mere 'subterfuge'

to avoid statutory obligations." *Alcazar v. Corp. of the Catholic Archbishop of Seattle*, 627 F.3d 1288, 1292 (9th Cir. 2010). *Inkjet* is in accord, describing the term "e-credits" used in that case as "a euphemism for coupons." *Inkjet*, 716 F.3d at 1176. Whether the benefit offered is called a "gift card" or "coupon" makes no difference. *See* Jeffrey S. Jacobson, *Defining 'Coupon' Under the Class Action Fairness Act*, Product Liab. Law 360 (Jan. 15, 2008) ("If class members can receive nothing more than the ability to buy a new product from the defendant at a discounted price, that is clearly a 'coupon settlement.'"). The legislative history of CAFA suggests that such in-kind relief is intended to fall within the ambit of a "coupon" settlement. *See Inkjet* 716 F.3d at 1194 (citing S. Rep. No. 109-14 (2005), which includes examples such as a free crib repair kit, free spring water, and free golf gloves or golf balls). This proposed settlement is no different, and may be accurately described as a "pure coupon" settlement of the type much maligned in recent years.[2]

    Unlike the settlement in *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934 (9th Cir. 2015), the proposed settlement here offers no "cash option." As such, class members must engage in further

---

[2] *See, e.g., Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 390-393 (C.D. Cal. 2007).

transaction(s) with defendant in order to obtain a benefit.  The *Resnick* settlement "provide[d] class members with either gift cards or, if they so chose, the cash equivalent of a gift card."  *Id.* at 940-41.  It may be reasonable to treat a settlement fund as a cash settlement when class members can opt for cash, or instead choose gift card, at their option.  This case is very different:  There is no cash option for anyone but class counsel and the class representatives, who alone get to take cash in the form of attorneys' fees and large incentive awards.  California's Legislative Counsel has concluded that a seller is not required to redeem a gift card in cash when requested by a consumer.  California Legislative Counsel, Opinion No. 1488 (February 11, 1997).  Moreover, the Settlement Agreement specifically states that the gift cards are not redeemable for cash.  *See* Amended Class Action Settlement Agreement at 5, ¶ 1.13.  Therefore, this settlement cannot be brought out of CAFA's provisions governing coupon settlements.  The implications are twofold, as discussed below.  First, the settlement must meet a more stringent test for fairness.  Second, the attorneys' fees award must be made in accordance with CAFA.  Unfortunately, the proposed settlement fails on both counts.

## B.    The Settlement's Injunctive Provisions are Vague and Unenforceable

The value of the proposed injunctive relief is an issue readily

dispatched. The first component merely states that defendant will comply with applicable state and federal laws relating to price comparison advertising and practices.[3]  But Defendant is already bound to obey the law, so this provision does not benefit the class in any tangible way.  Even the prophylactic effect is doubtful: were Defendant to violate the law, existing legal and equitable remedies would dwarf the minor additional penalty of a potential contempt sanction.  The other injunctive relief comprises the "roll-out of enhanced pricing compliance computer systems" and "pricing compliance training targeted at relevant buying office personnel."  But there are no further specifications, criteria, or details to guide the Court as to what exactly would be necessary or sufficient to discharge these obligations, and anything more than "nothing" would arguably satisfy the terms of the injunction.  The terms are too vague to be enforced via contempt motion, and it is impossible to put a value on these injunctive terms for the purposes of the settlement.

The injunctive provisions are too vague to support a finding that they are a benefit to the Class.  Additionally, even assuming that the provisions had any teeth, as prospective relief they don't benefit the identified Class any

---

[3]     Amended Settlement Agreement and Release § 3.4 ("Kohl's agrees that its comparative advertising and pricing practices, as of the date of this Amended Settlement Agreement, and continuing forward, will not violate Federal or California law, including California's specific price-comparison advertising statutes.").

more than members of the general public who may shop at Kohl's in the future.  There is no reason to invoke class treatment (and grant a release for past conduct) when the relief is prospective and not specific to the Class.

## C.     This Proposed Settlement Cannot Withstand the Strong Scrutiny Accorded to Coupon Settlements

A valuation of the compensatory component of the settlement also runs into difficulties.  The benefit is not a cash payment, but an opportunity to obtain a "gift card" that can be used towards purchases of products at Kohl's.  To the Class, the actual value of such relief is much less than the value of the coupons made available, and it is even less than the face value of those claimed.

CAFA requires heightened level of scrutiny over "generally disfavored" coupon settlements due to three common problems: (1) they often do not provide meaningful compensation to class members; (2) they often fail to disgorge ill-gotten gains from the defendant; and (3) they often require class members to do future business with the defendant in order to receive compensation.  *True*, 749 F. Supp. 2d at 1069.

Settlements offering defendants' products in lieu of cash restitution have been criticized both in the courts, *Bloyed v. General Motors Corp*, 881 S.W.2d 422, 435 (Tex. App. 1994), aff'd  916 S.W.2d 949 (Tex. 1996), and in the press.  *See* "Class Actions' Big Winners: The Lawyers," The Washington

Post, May 25, 1997; "Going to the Head of the Class Action Settlement," The Washington Post, April 9, 1996; and "The Latest Class Action Scam," The Wall Street Journal, December 27, 1995, at 11.   Accordingly, "in-kind compensation" is subject to higher scrutiny by the trial court and the coupons offered here should be viewed with skepticism by this Court.  *See, e.g., Synfuel Techs., Inc. v. DHL Express*, 463 F. 3d 646, 648 (2006).

This argument is far from academic.  The undesirability of "coupons" or "gift cards" has been confirmed by the routinely low redemption rate.  Indeed, the majority of these gift cards will never be redeemed.  "[A]lmost one-third of consumers who receive gift cards don't use them, according to Consumer Reports."[4]  In this case, Class Counsel seem to concede that few class members will even claim the gift cards, much less redeem them, so that their assessment of the value of the settlement relies on a dismally low claims rate:

> [I]t is possible to calculate a range of expected benefits to Settlement Class Members based on estimated claim rates.  For example, a 1% claim rate would provide a benefit of between $42.32-$51.40 for each Claimant; a 2% claim rate would provide a benefit of $21.16-$25.70 per Claimant; a 3% claim rate would provide a benefit of $14.11-$17.13; and, 5% claim rate would result in a minimum benefit of $8.46-$10.28.

---

[4] Morgan Quinn, *Why Retailers Love Gift Cards but You Shouldn't,* GO Banking rates (December 19, 2014, 2:52 p.m.), http://www.cbsnews.com/news/why-retailers-love-gift-cards-but-you-shouldnt/  (last accessed August 9, 2016, 9:49 a.m.).

Doc. 63-1 at ECF 20, citing Morosoff Decl. at ¶25.  From this it can be determined that the amount of relief per class member (i.e., a 100% claims rate) is actually between 42 and 51 cents, and the claim that class members would get a higher recovery is based on an absurdly low claims rate of one to five percent, a result that Class Counsel surprisingly anticipate without expressing the slightest concern that such a low claims rate might indicate widespread disdain for the proposed settlement, or a lack of notice, or some other issue.

Plaintiffs evidently would justify the low per-class member recovery as being a consequence of the possibility that the factual allegations and applicable consumer laws do not necessarily support any remedy providing cash compensation, such as damages or restitution.  Morosoff Decl., 23-24. That only points out the problem here: Plaintiffs' strongest case for a remedy is for an injunction.  But obtaining an injunction does not provide a fund to take a large percentage fee from, nor even necessarily require class treatment, and class counsel would be limited to a fee based on hours worked.  The result is a poor coupon settlement with a meaningless injunction, which nevertheless provides more attorneys' fees than a good injunction alone would.

The low per-class-member recovery also indicates that the coupons

are, from Kohl's perspective, primarily a marketing tool.  Unless the claims

rate is under three percent or so, the expected value of the gift cards is so low

on a per-class-member basis that a single gift card is unlikely to be sufficient

to purchase an entire item.  That means that, to use the benefit, Class

Members will have to come out-of-pocket with additional money to purchase

an item.  This kind of coupon settlement – aimed at turning the relief into a

kind of loss-leader to garner foot traffic and extra sales – is especially

disfavored.  *See, e.g., In Re General Motors Corp. Pick-Up Fuel Tank*

*Products Liability Litig.*, 55 F.3d 768, 818-19 (3d Cir. 1995) (rejecting

coupon settlement because the coupon amounted to "little more than a sales

promotion" for the defendant); *In re Compact Disc Minimum Advertised*

*Price Antitrust Litig.*, 216 F.R.D. 197, 221 (D. Me. 2003) (noting that "a

settlement is not fair where all the cash goes to expenses and lawyers, and

the members receive only discounts of dubious value"); *Buchet v. ITT*

*Consumer Fin. Corp.*, 845 F.Supp. 684, 696 (D. Minn. 1994), *amended* 858

F. Supp. 944 (rejecting a proposed coupon settlement after finding that the

coupon redemption rates in similar cases were so low that the certificates in

the *Buchet* settlement offered no real value to the class).  *Synfuel Techs., Inc.*

*v. DHL Express*, 463 F. 3d 646, 654 (2006) (noting that for many

consumers, "the right to receive a discount [or coupon] will be worthless")

(alteration in original) (quoting Geoffrey P. Miller & Lori S. Singer,

*Nonpecuniary Class Action Settlements*, 60 LAW & CONTMP. PROBS. 97, 108 (1997)); *Cf. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 328 (3d Cir. 1998) ("[W]e are impressed with the nature and extent of the relief provided under the settlement. . . . Rather than offering 8 million class members a small refund or a coupon towards the purchase of other policies (which we believe would have failed the fairness evaluation), the ADR process responds to the individual claims of the class and provides compensation based on the harm they have suffered.").

**D.   The Court Cannot Presently Approve the Contemplated Attorneys' Fees**

When Class Counsel have agreed to a fee as part of a settlement, they must make their motion for the fee – and direct it to interested class members – before the time to opt-out or object.  *See Mercury Interactive Corp. Sec's Litig.*, 618 F.3d 988, 994 (2010), which reversed and remanded a fee award under the same circumstances, commenting that:

> Allowing class members an opportunity thoroughly to examine counsel's fee motion...is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee.

Class counsel have not yet filed any motion for fees, and so it is impossible

for absent class members to analyze or comment upon that fee request.   The fee should be denied for that reason alone, but further scrutiny demonstrates additional reasons that the expected fee cannot be awarded.

## E.      This is a Coupon Settlement for the Purpose of Calculating Fees under CAFA

Under the rationale in *Inkjet*, to the extent a settlement is a "coupon settlement," plaintiffs' counsel must be paid a contingent amount measured by the redemption value of the coupons offered to and redeemed by class members. *Inkjet*, 716 F.3d 1173 at 1175-76.  CAFA is very clear that "any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed."  28 U.S.C. section 1712(a).  Plaintiff cannot recover attorneys' fees for cards that haven't yet been redeemed.  For that reason, this Court cannot presently award the requested fee consistent with CAFA.[5]

_____

[5] CAFA governs the calculation method for fees in this case regardless of the source of the fee-shifting statute.   In diversity cases, district courts apply only state laws that reflect a substantial policy of the state and which do not conflict with federal statutes or rules.  *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.,* 479 F.3d 1099, 1111 (9th Cir. 2007) (state-law fee shifting statutes are substantive for *Erie* purposes if there is no direct collision with the Federal Rules); *MRO Communications, Inc. v. American Telephone & Telegraph Company*, 197 F.3d 1276, 1281 (9th Cir. 1999) (in diversity cases, district court should follow state laws on attorneys' fees that reflect a substantial policy of the state so long as state law does not run counter to a valid federal statute or rule of court).  Thus, to the extent that California

But there are much more fundamental problems.  One is that the settlement as written in this case makes it impossible to determine how much will be actually redeemed by class members.  There is no provision for Kohl's to report back on the utilization of the gift cards, probably because they have no expiration date.  Nevertheless, some that are claimed may not be used, or they may not be used entirely.

Class Counsel may argue that the entire settlement amount will be distributed and therefore should be considered to be "actually redeemed" by class members, supporting a benchmark 25% measure of fees.  Objector doubts that coupons that are merely claimed and distributed can be considered "redeemed" as understood in CAFA.  But even if the Court endorsed that concept, Class Counsel's fee request is unsupportable because

jurisprudence under Cal. Code Civ. Proc. §1021.5 conflicts with CAFA, CAFA controls.

In addition, the procedures for requesting fees are supplied by federal law. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007), citing *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837 38 (9th Cir.2001).  Federal law also supplies the evidentiary requirements for attorneys' fee awards in diversity cases.  *Yeager v. AT&T Mobility*, 2012 WL 6629434 (E.D.Cal. Dec. 19, 2012) (Federal Rules of Evidence apply even in a diversity case, so that where plaintiff did not have personal knowledge of the services rendered by previous counsel, plaintiff's submission of  detailed invoices ... setting forth the services rendered was insufficient to meet his evidentiary burden); *Buena Vista, LLC v. New Resource Bank*, 2011 WL 250361 at *12 (N.D. Cal. Jan. 26, 2011) (awarding fees under Cal. Civ. Code §1717 and Cal. Code Civ. Proc. §1021, but reciting federal requirement that "the applicant has the burden of justifying his or her claim and must submit detailed time records for the court's consideration.") citing *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

the entire fund will not be distributed as gift cards, much less redeemed.

What will be available to be distributed is what is left after notice,

administration, attorney's fees and costs, and expenses are deducted:

> Assuming that Notice and Administration Costs equal KCC's estimate of $1,000,000, and assuming arguendo that the Court awards the full amount requested for Attorneys Fees and Costs ($1,537,500), and Enhancement Payments ($15,000), there would be $3,597,500 remaining in the Monetary Component for distribution to Claimants.

Motion for Preliminary Approval of Class Action Settlement and

Certification of Settlement Class, Doc. 63-1 at ECF page 20, citing Morosoff

Decl. at ¶25.

Here, class counsel are seeking 25% of the *gross* amount, not 25% of

the net amount that might actually be distributed to class members.  Class

counsel thus claim a percentage of moneys dedicated not to redemption, but

to notice, administration, and the very fees they are themselves seeking.

That is not consistent with the requirements of CAFA applicable to

percentage awards for coupon settlements such as this.

Thus, even if this Court were to agree with the proposition that any

money allocated to gift cards and distributed to claimants ought to be

considered "redeemed" even if some of it will not be, it should not agree with

Class Counsel's notion that a reasonable percentage could be taken from

parts of the fund that will never even be distributed.  Instead, if the Court

were to take that approach, it would presumably arrive at a fee that will equate to a reasonable percentage of the amount that the class will get, once the fee under consideration is awarded and subtracted.  Nevertheless, Objector reiterates that CAFA does not seem to contemplate awarding fees for coupons distributed without concern for whether they are ultimately redeemed.

This settlement illustrates the primary problem with gift cards, coupons, vouchers, credits, scrip, and other noncash relief: they "mask[] the relative payment of the class counsel as compared to the amount of money actually received by the class members" *Inkjet*, 716 F.3d at 1178 (quoting Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. REV. 991, 1049 (2002)).  "[C]ourts aim to tether the value of an attorneys' fees award to the value of the class recovery ... Where both the class and its attorneys are paid in cash, this task is fairly effortless ... But where class counsel is paid in cash, and the class is paid in some other way, for example, with coupons, comparing the value of the fees with the value of the recovery is substantially more difficult." *Inkjet*, 716 F.3d at 1177-1178.

The attempt to claim a percentage-based fee from the gross fund, without reference to actual redemption values, contravenes CAFA and should be denied.

## F.     The Proposed "Incentive Awards" are Excessive and Precluded by Binding Supreme Court Authority

In addition to an award of attorneys' fees, each of the plaintiffs seeks a special individual award of $7,500.00.[6]  It is important to note that plaintiffs are seeking $7,500 in *cash* rather than the gift cards the rest of the class stands to receive, although the plaintiffs are entitled to those as well.   These so-called "Enhancement Payments" are to be deducted from the settlement fund, along with attorneys' fees, prior to calculation or distribution of awards to class members.[7]

The attorneys' fee award and plaintiffs' "Case Representative Enhancement Award" in this case both were sought pursuant to, and thus are governed by, the "common fund" or "equitable fund" doctrine.[8]  "Since the decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad Banking Co. v. Pettus*, 113 U.S. 116 (1885)," American courts, both state and federal, have consistently recognized "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Though a class

---

[6] Amended Settlement Agreement, ¶ 3.1.4; *see also* Notice to Class Members, § 21

[7] Amended Settlement Agreement, ¶ 3.2

[8] Motion for Preliminary Approval, Dkt. 63 at ECF 10:10-14

representative's reasonable attorneys' fees may thus be reimbursed, the

common-fund doctrine of *Greenough* and *Pettus* flatly prohibits any

excessive award for services that the class representative itself renders: "The

reasons which apply to his expenditures incurred in carrying on the suit, and

reclaiming the property subject to the trust, do not apply to his personal

services and private expenses." *Greenough,* 105 U.S. at 537.  "'It would

present,' said Mr. Justice Bradley, speaking for the court, 'too great a

temptation to parties to intermeddle in the management of valuable

property or funds in which they have only the interests of creditors, and that,

perhaps, only to a small amount, if they could calculate upon the allowance

of a salary for their time and having all their private expenses paid.'" *Pettus,*

113 U.S. at 122 (quoting *Greenough,* 105 U.S. at 537-38).

"[S]pecial rewards for counsel's individual clients are not permissible

when the case is pursued as a class action." *Officers for Justice v. Civil

Service Commission of the City and County of San Francisco,* 688 F.2d 615,

632 (9th Cir.1982).  "Generally, when a person 'join[s] in bringing [an]

action as a class action . . . he has disclaimed any right to a preferred position

in the settlement.'" *Staton v. Boeing Co.,* 327 F.3d 938, 976 (quoting *Officers

for Justice v. Civil Service Commission of the City and County of San

Francisco,* 688 F.2d 615, 632 (9th Cir.1982); *accord, e.g., Bailey v. Great

Lakes Canning, Inc.,* 908 F.2d 38, 42 (6th Cir. 1990); *Kincade v. General*

*Tire Rubber Co.,* 635 F.2d 501, 506 (5th Cir. 1981); *Flinn v. FMC Corp.,* 528 F.2d 1169, 1175 (4th Cir. 1975). "Were that not the case, there would be considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Staton,* 327 F.3d at 976.

Where special side payments or incentive awards significantly exceed what absent class members can expect upon settlement approval they create "a patent divergence of interests between the named representatives and the class." *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 959 (9th Cir. 2009); *see also Radcliffe v. Experian Info. Solutions,* 715 F.3d 1157, 1161 (9th Cir. 2013). "Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard.'" *Staton v. Boeing Co.,* 327 F.3d 938, 975 (9th Cir. 2003) (quoting *Weseley v. Spear, Leeds & Kellogg,* 711 F.Supp. 713, 720-21 (E.D.N.Y. 1989)).

The Ninth Circuit has occasionally approved 'modest compensation' paid to class representatives for services performed. *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 943 (9th Cir. 2015) ($5000 per plaintiff). First, it is unclear those courts realized that doing so might violate

Supreme Court pronouncements.  Second, in this case the compensation is hardly modest; it is many times what absent class members would receive from the settlement.  Moreover, unlike in *Online DVD*, there is no option to receive cash reimbursement here.

There is no statutory, procedural, or equitable basis to support plaintiffs' request and plaintiffs did not allege that they were seeking service awards in the First Amended Complaint.  But even if plaintiffs were eligible for an "enhancement" award in this case, they have not demonstrated that their "services" warrant a $15,000 aggregate payment.  Courts have required that plaintiffs "must justify an incentive award through 'evidence demonstrating the quality of plaintiff's representative service'..." *Billinghausen v. Tractor Supply Co.*, 306 F.D.R. 245, 266 (N.D. Cal. 2015). Moreover, any award cannot be significantly higher than the amount recovered by the individual class members.  *Willner v. Manpower, Inc.*, 2015 U.S. Dist. LEXIS 80967 *27-30 (E.D. Cal. 2015) (reducing a stipulated service award in consideration of "the proportionality between the incentive payment and the range of class members' settlement awards"); *see also Golba v. Dick's Sporting Goods*, 238 Cal. App. 4th 1251, 1270-71 (2015) (reducing a service award of $3,500 to $500 where class members were to receive between $10 and $30 each).   Plaintiffs' request for service awards should be denied.

# IV.  <u>CONCLUSION</u>

For the foregoing reasons, Objector respectfully requests that the

Court withdraw its preliminary approval of the proposed settlement.

Objector hereby reserves the right to amend and refine her objections as

more information is made available.

Respectfully submitted this Ninth day of August, 2016.


s/ John W. Davis
John W. Davis (200113)
john@johnwdavis.com
501 W. Broadway, Suite 800
San Diego, California  92101
Telephone:  (619) 400-4870
Facsimile:  (619) 342-7170

C. Benjamin Nutley (177431)
nutley@zenlaw.com
1055 E. Colorado Blvd., 5th Floor
Pasadena, California  91106
Telephone:  (626) 204-4060
Facsimile:  (626) 204-4061

*Attorneys for Objector Sarah McDonald*